IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David "Osiris" Buff, #311020, | ) C/A No. 5:14-03022-TLW-KDW |
|                                       Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Report and Recommendation |
| Bryan P. Stirling, | ) |
| | ) |
|                                       Defendant. | ) |
| | ) |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging Defendant violated his constitutional rights. This matter is before the court on Plaintiff's Motion for Summary Judgment, ECF No. 64, filed on May 19, 2015, and Defendant's Motion for Summary Judgment, ECF No. 71, filed on June 19, 2015.[1] As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[2] on July 20, 2015, advising Plaintiff of the importance of the motion and of the need for him to file an adequate response. ECF No. 76. Defendant filed a Response to Plaintiff's Motion on June 19, 2015, ECF No. 72, and Plaintiff filed a Response to Defendant's Motion on August 31, 2015, ECF No. 84. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motions are dispositive, a Report and Recommendation is entered for the court's review.

---

[1] In a previous Report and Recommendation ("R&R), ECF No. 50, the undersigned recommending granting in part and denying in part Defendant's Motion to Dismiss, ECF No. 23. There, the undersigned found that Defendant's Motion to Dismiss Plaintiff's cause of action for a violation of his First Amendment rights was filed prematurely because the court was unable to determine factual justification for certain SCDC policies from the four corners of the Complaint. *Id.* at 7. On April 9, 2015, the district court accepted the recommendation. ECF No. 56.

[2] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I. Background

Plaintiff David "Osiris" Buff is currently an inmate at SCDC's Lieber Correctional Institution ("LCI"). ECF No. 1. In his Complaint, he alleges that on March 19, 2009, he was administratively segregated in the Special Management Unit ("SMU") for "non-disciplinary or non-behavioral reasons." *Id.* at 2. Plaintiff alleges that he will remain in SMU for the duration of his sentence. *Id.* Plaintiff describes the conditions of his confinement in SMU, including the length of time an inmate must stay in a single prison cell and the hours allotted for outside recreation. *Id.* Additionally, he describes the activities, such as participation in educational activities and group religious activities, that are prohibited to inmates in SMU. *Id.* Finally, Plaintiff maintains that he is isolated from contact with "current thoughts, ideas, information and news. . . .[and is] completely cut off from all public affairs and media outlets [and] from the entire world of information and visual stimuli. . . ." *Id.* at 3.

For his first cause of action, Plaintiff alleges a "violation of the First Amendment right to receive information, actionable pursuant to 42 U.S.C. § 1983." *Id.* Plaintiff maintains that the SMU policy that completely restricts the receipt of certain information violates the First Amendment. *Id.* Plaintiff identifies 21 "ways" that his First Amendment rights are allegedly violated by SCDC's mail policies. *Id.* at 3-4.

As a second cause of action, Plaintiff alleges "violation of the Fourteenth Amendments (sic) Equal Protection and Treatment Clause of First Amendment Rights Pursuant to 42 U.S.C. § 1983." *Id.* at 5. Specifically, Plaintiff alleges that certain SCDC policies restricting "the receipt and possession of publications[,] photographs and internet information through the mail, [] violate[] the Equal protection and treatment clause of the Fourteenth Amendment." *Id.* Plaintiff

identifies 22 "ways" that his constitutional equal protection and treatment rights are violated. *Id.* at 5-7.

Plaintiff requests an entry of judgment against Defendant, several forms of injunctive relief, declaratory relief detailing and stating that Defendant violated his constitutional, federal, and state rights, and any additional relief the court deems just and proper. *Id.* at 7. Finally, Plaintiff demands a trial by jury. *Id.*

After Plaintiff filed his Complaint, Defendant filed a Motion to Dismiss and submitted the following arguments to the court: 1) he is entitled to Eleventh Amendment immunity; 2) he should be granted qualified immunity to the extent Plaintiff has alleged claims against him in his individual capacity because Plaintiff only mentioned Defendant in relation to activities involving his discretionary functions as SCDC director, namely implementing policies; and 3) the doctrine of respondeat superior does not apply in §1983 actions, and Plaintiff's Complaint does not allege that Defendant was personally responsible for any of the alleged incidents. ECF No. 23. In his Response to Defendant's Motion, Plaintiff indicated that he was seeking only injunctive relief, not monetary relief. ECF No. 29 at 2. Therefore, Plaintiff argued that Eleventh Amendment Immunity and qualified immunity are not cognizable defenses when a plaintiff is seeking injunctive relief. *Id.* at 2-4. In Reply, Defendant acknowledges that sovereign immunity and qualified immunity "are not appropriate for claims seeking only injunctive and declaratory relief and therefore agrees to abandon the same for those specific claims." ECF No. 33 at 2.

Therefore, Plaintiff's allegations of violations of his First and Fourteenth Amendment rights are the only remaining causes of action before the court.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.  Analysis

### A. Defendant's Motion for Summary Judgment

#### 1. First Amendment Cause of Action

In his Motion for Summary Judgment, Defendant argues that Plaintiff's cause of action alleging a violation of his constitutional rights fails because "[t]he SMU Policy limiting access to books and magazines to those available from Library Services and restricting the receipt of books, magazines, newspapers, photographs, and other reading material though the mail is reasonably related to legitimate penological interests, and therefore, does not violate Plaintiff's First Amendment rights." ECF No. 71-10 at 8.

In Response, Plaintiff contends that though Defendant maintains that the policy in question concerns "behavior modification," Defendant fails to point to any specific behavior that needs to be modified on his part. ECF No. 84 at 3. Further, Plaintiff argues that Defendant fails to properly differentiate between non-disciplinary inmates and disciplinary inmates for the blanket ban's application. *Id.*

Generally, inmates enjoy a First Amendment right to receive and send mail, but prison officials may adopt regulations that impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safely,* 482 U.S. 78, 89 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 414-15 (1989); *Corey v. Reich*, No. C/A 0:02-2801-12, 2004 WL 3090234, at *9-10 (D.S.C. Mar. 9, 2004) *aff'd,* 103 F. App'x 753 (4th Cir. 2004). To determine whether a policy or regulation is reasonable, the Court examines four factors: (1) whether the regulation or policy is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising the right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives with which the prison could

continue to serve its interest without impinging on constitutional rights. *Turner,* 482 U.S. at 89-90. Legitimate penological interests include preserving prison security and maintaining order and discipline. *Thornburgh*, 490 U.S. at 423; *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003). Moreover, in noting the difficult and delicate problems of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id.* at 408; *see also Altizer v. Deeds*, 191 F.3d 540, 547 (4th Cir. 1999) (holding that a prison rule that impinges on an inmate's constitutional rights is valid if reasonably related to legitimate penological interests).

This court is tasked with determining whether the SCDC policies of which Plaintiff complains pass constitutional muster. Defendant cites to *Beard v. Banks*, 548 U.S. 521 (2006), in support of his contention that SCDC's policy does not violate a "prisoner's rights protected under the constitution." ECF No. 71-10 at 10-11. The *Beard* case arose from a summary judgment motion, and the Supreme Court held that prison officials set forth adequate legal support for the policy denying prisoners in Pennsylvania's Long Term Segregation Unit access to newspapers, magazines, or personal photographs. *Id.* at 525. There, in affirming, the Supreme Court relied on "several justifications for the prison's policy, including the need to motivate better behavior on the part of particularly difficult prisoners, the need to minimize the amount of property they control in their cells, and the need to ensure prison safety, by, for example, diminishing the amount of material a prisoner might use to start a cell fire." *Id.* at 530.

The undersigned has examined the specific SCDC policies at issue and the Defendant's justifications for those policies. In support of his Motion, Defendant attached the affidavit of Fred Thompson, Associate Warden at LCI. ECF No. 71-1 at ¶ 1. Warden Thompson attests that

Plaintiff has been confined in the Special Management Unit ("SMU") at LCI since 2009. *Id.* at ¶ 2. Warden Thompson attached a "true and accurate copy of the current SMU policy," SCDC Policy No. OP-22.12, as an exhibit to his affidavit. *Id.* at ¶ 3. According to Section 24 that governs property, inmates housed in the SMU may possess a primary religious book such as a Bible or Qur'an. *Id.* at ¶¶ 6-7; ECF No. 71-3 at 9.[3] In addition, an SMU inmate is permitted to possess one book which must be obtained through Library Services, 10 personal letters, and three photographs. ECF No. 71-3 at 10. SMU inmates are not allowed to receive newspapers. *Id.* (*see* § 26.3).

In his affidavit, Warden Thompson provides several policy objectives for the property policy at issue. *See* ECF No. 71-1 at ¶¶ 10-11. First, Warden Thompson attests that the policy "create[s] an incentive or motivation for inmates placed in SMU to change their behavior to either obtain release from SMU or avoid placement in SMU [because] [w]hen an inmate is released into general population, the property limitations imposed in SMU, including the restrictions on the receipt of books, magazines, newspapers, photographs, and other reading material through the mail and restrictions on canteen privileges, are no longer applicable." *Id.* at ¶ 10. Further, Warden Thompson attests that the limitations on SMU inmates' access to these materials "serve to promote better behavior and discipline which is an important and necessary reason for the Policy." *Id.* Additionally, Warden Thompson avers that the policy "serves as an incentive and motivation for inmates in the general population to adjust their behavior to avoid an assignment to SMU, [and] the restrictive environment in SMU fosters discipline and order for inmates both within SMU and outside the unit." *Id.* at ¶ 11. Additionally, Warden Thompson

---

[3] The undersigned notes that though Thompson's affidavit references section 26 of the SMU Policy, upon review, *section 24* governs property that inmates may possess. *See* ECF No. 71-2 at 2; ECF No. 71-3 at 8-10.

reasons that the limitations placed on an inmate's access to books, magazines, newspapers, photographs, and other reading material "was adopted for security reasons, [and] [i]t is critical that strict limitations be placed on the amount of property that an inmate can possess in his cell [because] tremendous clutter [can] provide inmates hiding places for weapons and contraband." *Id.* at ¶ 12. Warden Thompson further provides: "By limiting the opportunity for inmates in SMU to hide weapons and contraband, SCDC can provide a more secure and safe environment for other inmates and staff." *Id.*

Warden Thompson represents that the limitations also help prevent a "fire hazard that excess paper presents in a prison environment, especially in lock-up units." *Id.* at ¶ 13. Finally, Warden Thompson attests that the policy serves "as a deterrent for certain improper uses of paper available from books, magazines, newspapers, photographs, and other reading material." *Id.* at ¶ 14. Specifically, Warden Thompson attests:

> There is a history of inmates using paper from books, magazines, newspapers, photographs and other reading material acquired through the mail to cover cell windows to conceal activity within the cell and to jam the locks to prevent entry into the cell. In addition, there have been cases where paper from personal books, magazines, newspapers, photographs, and other reading material has been used to stop up toilets and cause flooding of the facility. These types of incidents are not only disruptive to the day-to-day operation of the units, but also such incidents create the need for additional manpower in the units and they increase the need for direct contact between the staff and inmates (such as the use of Force Cell Movement Teams to remove an inmate from a cell). By taking steps to avoid or minimize such events, this Policy is designed to increase the safety and security of the SMU.

*Id.*

Turning to the four *Turner* factors, the undersigned finds that Defendant has presented several rationales for the policy that are rationally related to a legitimate governmental interest, thus satisfying the first *Turner* prong. *See Beard*, 548 U.S. at 531-32 ("The articulated connections between newspapers and magazines, the deprivation of virtually the last privilege

left to an inmate, and a significant incentive to improve behavior, are logical ones. Thus, the first factor supports the Policy's 'reasonableness.'"). As to the second factor, whether there are alternative means of exercising the right, Defendant asserts that Plaintiff is not wholly restricted but is merely limited to "the amount he may possess." ECF No. 71-10 at 15. The *Beard* Court found: "[A]s long as the inmate remains at level 2, *no* 'alternative means of exercising the right' remain open to him [and] these circumstances simply limit, they do not eliminate, the fact that there is no alternative. The absence of any alternative thus provides 'some evidence that the regulations [a]re unreasonable,' but is not 'conclusive' of the reasonableness of the Policy." 548 U.S. at 532. However, the inmates in *Beard* had "no access to newspapers, magazines, or personal photographs." *Id.* at 526. Here, Plaintiff is entitled to check out many books, but he is only entitled to possess one at a time. Under the third *Turner* factor, the undersigned finds, as did the *Beard* Court, that there would be a negative effect should prison authorities seek to accommodate the Plaintiff's asserted right. *See id.* at 532 ("If the Policy (in the authorities' view) helps to produce better behavior, then its absence (in the authorities' view) will help to produce worse behavior, *e.g.*, 'backsliding' (and thus the expenditure of more 'resources' at level 2)."). Finally, under the fourth and final *Turner* factor, the undersigned finds that there is not an "alternative method of accommodating the claimant's constitutional complaint . . . that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Id.*

However, no matter how the *Turner* factors are weighed, the *Beard* Court upheld a more stringent policy and instructed that "[t]he real task in this case is not balancing these factors, but rather determining whether the Secretary shows more than simply a logical relation, that is, whether he shows a *reasonable* relation. We believe the material presented here by the prison officials is sufficient to demonstrate that the Policy is a reasonable one." *Id.* at 533. Accordingly,

the undersigned recommends granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's cause of action for a First Amendment violation because based on the record before the court the Policy of which Plaintiff complains is reasonably related to legitimate governmental objectives. *See e.g., Peoples v. Burtt*, No. C/A 8:07-2702-CMC-BHH, 2008 WL 2315865, at *5 (D.S.C. May 30, 2008) (granting summary judgment and relying on affidavit that "discusses other penological objectives served by the policy at issue"); *Wiles v. Ozmint*, No. C/A 0:05-2111-CMC-BM, 2006 WL 2260136, at *10 (D.S.C. Aug. 7, 2006) *aff'd*, 221 F. App'x 257 (4th Cir. 2007) (granting summary judgment where, "[w]ith respect to Plaintiff's complaints about the receipt of publications through the mail [that] Defendants' evidence reflects the motivations and rationale behind these policies"); *Koon v. Ozmint*, No. C/A 806-2000-RBH, 2007 WL 1486067, at *4 (D.S.C. May 18, 2007) (granting summary judgment where evidence demonstrated that "SCDC policy for SMU inmates is rationally related to legitimate and neutral governmental objectives"); *Corey v. Reich*, No. C/A. 0:02-2801-12, 2004 WL 3090234, at *9 (D.S.C. Mar. 9, 2004) *aff'd*, 103 F. App'x 753 (4th Cir. 2004) (granting summary judgment where "the evidence from the Defendants, fails to show a violation of Plaintiff's constitutional rights").

2. Equal Protection Clause Cause of Action

Defendant argues that the SMU Policy limiting access to books and magazines to those available from Library Services and restricting the receipt of books, magazines, newspapers, photographs, and other reading material through the mail does not violate the Equal Protection Clause because the SMU Policy is rationally related to a legitimate state interest. ECF No. 71-10 at 17-19. Specifically, Defendant maintains that the policy "promot[es] good behavior among SMU inmates, address[es] security concerns in the SMU, and limit[s] the opportunity for SMU

inmates to improperly use the paper from these sources to hide contraband, set fires, cover windows, jam locks, or stop up toilets." *Id.*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The purpose of the Clause is to keep "governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001). When asserting an equal protection claim, to survive summary judgment, a plaintiff must first have evidence to demonstrate that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and, if so, the court must then determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Cunningham,* 2013 WL 6834599, at *2 (citing *Veney v. Wyche,* 293 F.3d 726, 730–32 (4th Cir. 2002)).

The undersigned finds that Plaintiff has failed to produce any evidence that he is being treated differently *from others with whom he is similarly situated*. The rules and regulations that pertain to inmates in SMU are different from the rules and regulations that apply to inmates in general population and other prison populations. However, the property rules that apply in this instance concern "ALL inmates in SMU. . ." *See* ECF No. 71-3 at 9 (citing § 24.1). Therefore, the undersigned finds that Plaintiff fails the first part of the equal protection test. However, to the extent the district court finds that Plaintiff has presented evidence that he is being treated differently from others with whom he is similarly situated, the undersigned recommends the

11

court find there is no equal protection violation because, as demonstrated in the prior section, the disparate treatment is "reasonably related to a legitimate penological interest." Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be granted and Plaintiff's cause of action for a Fourteenth Amendment equal protection violation be dismissed.

### 3. Canteen Privileges

In his final argument, Defendant maintains that Plaintiff has no constitutional right to canteen privileges. ECF No. 71 at 19-20. Defendant assumes Plaintiff's request for injunctive relief arises out of Plaintiff's Equal Protection claim. *Id.* at 20. Even if Plaintiff had such a constitutional right, Defendant argues that Plaintiff's cause of action fails because SMU's restriction on canteen purchases by SMU inmates is rationally related to a legitimate state interest. *Id.* The undersigned agrees.

Prisoners do not have a protected liberty interest in canteen privileges. *See Chisolm v. SCDC*, No. CA 1:12-3055-RBH-SVH, 2013 WL 1567395, at *2 (D.S.C. Feb. 7, 2013) *report and recommendation adopted*, No. 1:12-CV-03055-RBH, 2013 WL 1567443 (D.S.C. Apr. 15, 2013); *Durdick v. Byars*, CA No. 3:11–2979–CMC–JRM, 2012 WL 5306263, at *5 (D.S.C. Sept. 28, 2012) (holding there is no protected liberty interest in telephone, canteen, or visitation privileges); *Bennett v. Cannon*, CA No. 2:05-2634-GR, 2006 WL 2345983, at *2 (D.S.C. Aug. 10, 2006) ("There is simply no freestanding constitutional right to canteen privileges at all. . . ."). Because Plaintiff does not have a protected liberty interest in canteen privileges, the undersigned recommends granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's claim for injunctive relief or canteen privileges.

### B. Plaintiff's Motion for Summary Judgment

On May 19, 2015, Plaintiff filed a Motion for Summary Judgment. ECF No. 64. Therein, Plaintiff asked the court to grant him summary judgment because as applied, Defendants' policies "are not reasonably related to legitimate, neutral penological interests, which violates the First Amendment and by permitting other inmates to receive and possess publications, photographs and internet information through the mail, but not Plaintiff, violates the Fourteenth Amendment[']s Equal Protection Clause." *Id.* at 3. The undersigned disagrees. As discussed in the sections above, SCDC's policy concerning property SMU inmates may possess is reasonably related to legitimate penological interests. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment, ECF No. 64, be denied.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 71, be *granted*, and Plaintiff's Motion for Summary Judgment, ECF No. 64, be *denied*, and this case be dismissed.[4]

IT IS SO RECOMMENDED.

November 2, 2015                                        Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[4] Defendants filed a Supplemental Motion for Summary Judgment since the undersigned reviewed and made findings concerning the initial Motion for Summary Judgement. *See* ECF No. 86. There, Defendants represent that on August 11, 2015, Plaintiff was released from SMU and returned to the general population. Plaintiff has failed to file a Response to that Motion though he was instructed to file a Response by October 29, 2015. Therefore, the district court could alternatively find that Plaintiff's claims should be dismissed on mootness grounds as opposed to the above recommendations.