IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| David Buff *also known as* David Keith Buff *also known as* Osiris, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 5:14-cv-03022-TLW |
| Bryan P. Stirling, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER**

Plaintiff, David Keith Buff ("Plaintiff"), proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>, brought this action on July 29, 2014 pursuant to 42 U.S.C. § 1983, alleging violation of his constitutional rights based upon conditions of his confinement at Lieber Correctional Institution ("LCI") and, more specifically, the Special Management Unit ("SMU"). (Doc. #1). Plaintiff seeks declaratory relief and an injunction against enforcement of a prison regulation that applies to prisoners housed in the SMU. He does not seek money damages.

Plaintiff primarily alleges that a South Carolina Department of Correction's ("SCDC") policy restricting SMU inmates' access to "publications" is unconstitutional as it violates the First Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment.[1] He challenges

---

[1] Publication is defined in the Policy: "Publication refers to any printed communications such as newspapers, magazines, newsletters, books, paperbacks, brochures, periodicals, technical manuals, catalogs, and/or pamphlets which can be subscribed to, ordered, or otherwise received direct from an approved source (e.g., publisher, bookstore, etc.)." (Doc. #64-3 at 42). The policy states that: "Inmates in SMU may not receive any publications, to include newspapers and magazines, while in SMU. Publications will be returned as outlined in Agency Policy/Procedure OP-22.03, 'Authorized Inmate Property and Disposition.' Newspapers and magazines will be disposed of." (Doc. #64-3 at 39 ¶ 9.1).

the policy's limitation on receiving any publication through the mail to be accessed outside or inside an inmate's cell. The SCDC maintains two specialized security detention units for inmates, one of which is the SMU where Plaintiff was housed.[2] See Incumaa v. Ozmint, 507 F.3d 281, 283–84 (4th Cir. 2007). The Plaintiff began a term of imprisonment at LCI in March of 2009. Almost immediately, Plaintiff was assigned to the SMU, and remained in that unit for more than five (5) years. Plaintiff alleges he was assigned to the SMU for "non-disciplinary" and "non-behavioral" reasons. Defendant does not dispute that Plaintiff has been assigned to SMU for reasons unrelated to his behavior in prison. Defendant does not dispute that Plaintiff was assigned to SMU when Plaintiff began his term of imprisonment in 2009.[3]

The SMU is substantially more restrictive than the general population. See, e.g., Incumaa v. Stirling, 791 F.3d 517 (4th Cir. 2015) (discussing some additional restrictions applicable to SMU inmates). The record reflects that there are approximately 600 inmates assigned to SMU in the state of South Carolina. The policy at issue in this case restricts SMU inmates from receiving or accessing any publication through the mail. In addition, SMU inmates are not permitted any access to a radio, television, or the internet. The policy also explicitly states that "Inmates in SMU will not be allowed to receive newspapers." (Doc. #64-3 at 31). Publication is defined in SCDC policy as "any printed communications such as newspapers, magazines, newsletters, books,

---

[2] The two security detention units are the Maximum Security Unit ("MSU") and the Special Management Unit ("SMU"). Plaintiff in the instant case is challenging the policy applicable to prisoners housed in the SMU. The SCDC "houses its most dangerous and recalcitrant inmates in the MSU. The SMU is designed for prisoners who are in need of greater monitoring and supervision than those in the general population but who do not warrant placement in the MSU." Incumaa, 507 F.3d at 283.

[3] However, Defendant states in a supplemental motion for summary judgment (Doc. #86) that Plaintiff was released from the SMU and returned to the general population in August of 2015, during the pendency of the above-captioned matter. The Report and Recommendation did not address the merits of the supplemental motion for summary judgment.

paperbacks, brochures, periodicals, technical manuals, catalogs, and/or pamphlets which can be subscribed to, ordered, or otherwise received direct from an approved source (e.g., publisher, bookstore, etc.)." (Doc. #64-3 at 42). Prisoners in SMU are permitted to check out one book from the prison library collection. Plaintiff, like all SMU inmates, is prohibited from accessing, receiving, reading, and possessing any publication other than those books available in the prison library. He cannot receive publications, such as newspapers or GED study materials, even if mailed directly from a publisher or publications supplier. The SMU policy also prohibits SMU inmates from participating in "education and vocational opportunities." (Doc. #64-3).

Plaintiff filed a motion for summary judgment on May 19, 2015 (Doc. #64). Defendant responded with a cross motion for summary judgment on June 19, 2015 (Doc. #71; #72), to which Plaintiff replied on August 31, 2015 (Doc. #84). Defendant filed a supplemental motion for summary judgment on September 23, 2015 (Doc. #86), to which Plaintiff responded in opposition on November 4, 2015 (Doc. #91). A Report and Recommendation ("the Report") was issued on November 2, 2015 by United States Magistrate Judge Kaymani D. West, to whom this case was previously assigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). (Doc. #89).

This matter is now before the Court for review of the Magistrate Judge's Report (Doc. #89), in which she recommends that this Court deny Plaintiff's motion for summary judgment (Doc. #64) and grant summary judgment in favor of Defendant (Doc. #71). Plaintiff filed objections to the Report on November 30, 2015 (Doc. #95). Defendant did not file a reply to Plaintiff's objections. (Doc. #123). This matter is now ripe for disposition.

This Court is charged with conducting a de novo review of any portion of the Magistrate Judge's Report to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636. In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections. . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Hous. Auth. of City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

In the Report, the Magistrate Judge sets forth in detail the relevant facts and standards of law. (Doc. #89). The Court incorporates the Magistrate Judge's recitation of the facts and the legal standards herein.

The United States Supreme Court has recognized that "imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment." Turner v. Safley, 482 U.S. 78, 93 (1987). However, the Supreme Court has also made clear that "the Constitution sometimes permits greater restriction of such rights in a prison that it would allow elsewhere." Beard v. Banks, 548 U.S. 521, 527 (2006). In addition, courts owe substantial deference to the professional judgment of prison administrators. See id. Moreover, "[f]reedom of speech is not merely freedom to speak; it is also freedom to read," receive, and to think. King v. Fed. Bureau of Prisons, 415 F.3d 638 (7th Cir. 2005); see also Beard,

548 U.S. 521. Courts acknowledge, however, that managing a prison "is an inordinately difficult undertaking that requires expertise, planning, and commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner, 482 at 84–85. Thus, courts must accord substantial deference to the professional judgment of prison administrators. Id.

In Beard v. Banks, 548 U.S. 521 (2006), the Supreme Court, in a plurality opinion, applied the deferential standard set forth in Turner v. Safley, 482 U.S. 78 (1987), to prisoner cases involving First Amendment restrictions. In Beard, a Pennsylvania inmate, on behalf of himself and similarly situated inmates, brought a First Amendment challenge to a Pennsylvania Department of Corrections policy restricting access to newspapers, magazines, and photographs by inmates placed in the most restrictive level of the Commonwealth's long-term segregation unit. Beard, 548 U.S. 521. The plurality in Beard applied Turner's standard that restrictive prison regulations are permissible if they are "reasonably related to legitimate penological interests," 482 U.S. at 87, and are not an "exaggerated response" to such objectives. Id. Under that test, a court considers four factors "relevant in determining the reasonableness of the regulation at issue," Beard, 548 U.S. at 529 (quoting Turner, 482 U.S. at 89), and thus whether a reasonable relationship exists: (1) whether there is a valid, rational connection between the restriction and a legitimate governmental interest; (2) whether alternatives for exercising the right at issue are available to the prisoner; (3) what impact accommodation of the right will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the right. Beard, 548 U.S. at 529 (citing Turner, 482 U.S. at 89). Applying this test in Beard, the United States Supreme Court upheld the restrictive Pennsylvania Department of Correction's publication policy. Id.

In the instant case, Defendant justifies the SMU policy restricting access and possession of publications on a number of grounds, including, among other reasons, the need to motivate better behavior of difficult prisoners, deter other inmates from violating prison rules, minimize the amount of property inmates have in their cells, and further ensure prison safety, by, for example, diminishing the amount of material a prisoner might use to start a cell fire. (Doc. #71; #71-1). As explained below, the Court concludes that Defendant's legitimate justifications for the SMU regulation are adequate and warrant summary judgment in Defendant's favor.

Plaintiff has set forth a number of specific objections to the Report, and the Court will address each in turn. Plaintiff first argues that the Magistrate Judge did not analyze a fundamental aspect of his First Amendment claim. More specifically, he asserts that the Magistrate Judge's conclusion that the SMU policy is justified relies on the premise that this Court owes deference to prison officials in the management of prisons, and as such should allow prison officials to maintain order by enforcing policies aimed at preventing prisoners from accumulating too much property in their cells, which they could use to cause clutter, is a fire hazard, or could clog the toilet. Plaintiff clarifies in his objections that the primary subject of his First Amendment claim is the denial of *access* to publications absolutely, if not available in the prison library, regardless of whether he is permitted to possess the publications in his prison cell. Plaintiff seems to acknowledge that prison officials have the right to enact policies that limit the amount of property in cells due to security concerns. Instead, however, the heart of Plaintiff's First Amendment challenge to the policy lies in the complete restriction of access to and receipt of publications through the mail whatsoever. Even outside of his cell, in the prison library for example, Plaintiff is prohibited from reading a newspaper, a magazine, an article, an internet article, or any other publication not made available

by SCDC. Plaintiff cannot receive any publication through the mail, regardless of content or origin, to read outside of his cell. Plaintiff argues that his principal challenge to the policy is not that it limits the number or character of publications that Plaintiff is permitted to possess in his cell. The issue is the complete prohibition of access to receive information and publications even outside of his cell. In connection with this issue, Plaintiff also objects that the Magistrate Judge did not consider that, because Plaintiff does not have access to the news or other information about the outside world through television, the radio, or the internet, there are no reasonable alternatives for him to exercise his First Amendment right. The Court recognizes the distinction between the issues Plaintiff has raised relating to the policy, and has considered and analyzed both the access and possession aspects of Plaintiff's First Amendment claim in reaching its conclusion, as discussed below.

Plaintiff next objects to the Magistrate Judge's Report on the basis that she improperly employed "absolute deference" to Defendant in reaching the general conclusion that Defendant sufficiently satisfied the standard set forth in Turner and Beard. (Doc. #95 at 3). In other words, Plaintiff objects to the outcome recommended by the Magistrate Judge. Plaintiff argues that "the Turner standard is not toothless," (Doc. #95 at 3), and requires a defendant to show more than a mere logical relation between the governmental interest set forth to justify the policy. Plaintiff asserts Defendant's rationales are not reasonably related to the SMU publication policy. In making this argument, Plaintiff relies heavily on a portion of the opinion in Beard, wherein a plurality of the Supreme Court suggested that it is not "impossible for prisoners or others attacking a prison policy like the present one ever to succeed or to survive summary judgment." Beard v. Banks, 548 U.S. at 535. The Court stated that the First Amendment "requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective." Id. at 535.

Plaintiff argues that, under <u>Beard</u>, Defendant must show "a reasonable relation" between the restriction and legitimate penological interests.  <u>Id.</u> at 531.

While Plaintiff is correct on the legal standard applicable to his claim, the Court overrules this objection and concludes that Defendant has sufficiently demonstrated that the publication restriction in this case reasonably serves legitimate governmental objectives.  In support of the motion for summary judgment, Defendant submitted an affidavit from Warden Thompson who attests that the publication policy at issue in this case "create[s] an incentive or motivation for inmates placed in SMU to change their behavior to either obtain release from SMU or avoid placement in SMU [because] [w]hen an inmate is released into general population, the property limitations imposed in SMU, including the restrictions on the receipt of books, magazines, newspapers, photographs, and other reading material through the mail and restrictions on canteen privileges, are no longer applicable."  (Doc. #71-1 at ¶ 10).

Plaintiff counters that, to the extent Defendant attempts to justify the policy on grounds related to behavioral modification and incentivizing good behavior, the SMU is not limited to inmates who are "the worst of the worst," as was the circumstance in <u>Beard</u>.  Rather, Plaintiff argues, this policy applies more broadly because there are prisoners, such as the Plaintiff, who are assigned to SMU based on no behavioral infraction of prison rules whatsoever.  Plaintiff argues the behavioral modification rationales are not reasonable, and thus are insufficient to sustain the policy under <u>Turner</u>, because he and potentially other SMU inmates, have been subjected to the policy for non-behavioral and non-disciplinary reasons.  In essence, Plaintiff argues the objective to modify bad prison behavior does not work for prisoners who behave.  Defendant does not contest that Plaintiff was placed into SMU and thus subject to the restrictive publication policy for non-behavioral and non-disciplinary reasons and the record otherwise supports that Plaintiff

complied with prison rules.  However, after careful consideration, the Court concludes that the Plaintiff's attempted "as applied" constitutional challenge to the publication policy fails.  Plaintiff acknowledges there are inmates assigned to SMU and subjected to the publication policy based on behavioral issues during their incarceration.  As to those difficult inmates, motivating better behavior is a reasonable, legitimate governmental objective which satisfies <u>Turner's</u> requirements.  Moreover, Defendant's penological rationales encompass more than just behavior modification as the policy also serves deterrence and safety purposes.

Defendant asserts the policy is additionally aimed at addressing security concerns that are unique to the prison environment.  (Doc. #71-1).  In his affidavit, Warden Thompson states that the policy "was adopted for security reasons, [and] [i]t is critical that strict limitations be placed on the amount of property that an inmate can possess in his cell [because] tremendous clutter [can] provide inmates hiding places for weapons and contraband."  (Doc. #71-1 at ¶ 12).  Moreover, the policy helps to protect from the "fire hazard that excess paper presents in a prison environment, especially in lock-up units."  (Doc. #71-1 at ¶ 13).  Plaintiff objects that the governmental interests that relate to prison security, fire hazards, and safety that Defendant set forth do not justify the policy limiting access to, rather than possession in a prison cell, of publications.  The Court notes that Defendant has set forth a number of legitimate justifications for the publication policy.  To the extent the SMU policy does limit the quantity of publications SMU inmates may possess in their cells, the Court concludes that the security rationales offered by Defendant satisfy <u>Turner</u>.

Next, Plaintiff objects on the basis that the Magistrate Judge did not consider the evidence and examples of less stringent restrictions on access to publications he submitted that are employed by other prison institutions or special security units and divisions. Specifically as to SCDC institutions, Plaintiff submitted publication policies that demonstrate inmates housed in Death Row

and Statewide Protective Custody facilities have more access to publications than inmates in SMU. Plaintiff argues that the fact these other institutions or facilities have less restrictive policies, but still in theory house dangerous inmates, demonstrates that the SMU publication policy is an exaggerated response to the prison administration concerns.  Plaintiff also suggests the policies employed by other prison facilities proves that there are less restrictive alternatives available that SCDC could enact that would be more accommodating to the constitutional rights of SMU inmates.  After careful consideration, this objection is overruled.  The Court has taken into account the other policies submitted by the Plaintiff to support his argument.  However, the Supreme Court has made clear that courts must accord substantial deference to the judgment of prison officials in the management and administration of prisons.  This Court declines to hypothesize and speculate about the legitimacy of the reasons underlying a prison administration's decision to employ different publication policies and restrictions at different facilities.  That inquiry is best left to the professional judgment of the prison authorities.

As previously noted, the Court recognizes there is a distinction between a prison policy that regulates the number of publications or other materials a prisoner may possess at one time in his cell, a prison policy that regulates the type of publications that may be received by a prisoner in the mail (i.e. publishers only) on the basis of safety, and the policy at issue in this case which is a blanket restriction on receipt and access to certain types of information and publications altogether.  However, the Supreme Court in <u>Beard</u> applied a deferential standard to the prison administration officials.  The similarities between this case and <u>Beard</u> are significant.  The lack of clear, binding precedent leads this Court to conclude that, in the above-captioned matter, Plaintiff has not established a violation of his First Amendment rights based on the SMU publication policy. In light of the numerous and reasonable governmental interests offered by Defendant to support

the policy, the Court cannot conclude that the policy in the instant case is unconstitutional.  The United States Supreme Court held that the "real task" in cases such as this is "determining whether the [defendant] shows more than simply a logical relation, that is, whether he shows a *reasonable* relation" between the policy and the prison objectives.  Beard, 548 U.S. at 533.   In this case, Defendant has offered multiple legitimate governmental interests related to prison administration which are all served by the SMU publication restriction.  In short, after careful consideration, the Court concludes that the SMU publication policy is reasonably related to legitimate penological interests.  The Court recognizes that other courts considering similar policies have reached a different conclusion.  See, e.g., Koger v. Dart, 114 F. Supp. 3d 572, 584 (N.D. Ill. 2015) ("Defendants have failed to raise a genuine dispute of fact regarding whether the jail's newspaper ban is reasonably related to institutional security.  The Court therefore concludes that the jail's policy banning newspapers is unconstitutional."); West v. Frank, 492 F. Supp. 2d 1040, 1047 (W.D. Wis. 2007) (holding that the court "cannot conclude that defendants have met there burden on summary judgment to show as a matter of law that the publication is constitutional as it was applied to plaintiff. . . . The most obvious deficiency in defendants' evidence is that they have failed to make any showing that their behavior modification rationale applies to plaintiff").  However, this Court finds in the instant case that Beard controls, and the Defendants have sufficiently demonstrated the SMU publication ban is constitutional.

The Court has carefully reviewed the Report and Plaintiff's objections thereto in accordance with the standard announced in Wallace, and it concludes that the Magistrate Judge accurately summarizes the case and the applicable law.  While this Court does not deny the constitutional importance of the interests in question in this case, after careful consideration, it concludes that Defendant has set forth adequate legal support for the policy.  It is therefore

**ORDERED** that the Magistrate Judge's Report and Recommendation is **ACCEPTED** (Doc. #89), and Plaintiff's objections are **OVERRULED** (Doc. #95).  Defendant's motion for summary judgment is hereby **GRANTED** (Doc. #71) and Plaintiff's motion for summary judgment is hereby **DENIED** (Doc. #64).  In the alternative, the Court concludes that the issue presented has been deemed moot upon Plaintiff's release from SMU.

   **IT IS SO ORDERED.**

         <u>s/ Terry L. Wooten</u>
         TERRY L. WOOTEN
         Chief United States District Judge

March 31, 2016
Columbia, South Carolina